USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/29/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
TREVOR BURNS,                                    :
                                                 :
                        Plaintiff,               :          **OPINION AND ORDER**
                                                 :
v.                                               :          16 CV 782 (VB)
                                                 :
THOMAS GRIFFIN, MICHAEL T. NAGY,                 :
MARK A. TOKARZ, AND DANIEL J.                    :
SHAW,                                            :
                                                 :
                        Defendants.              :
------------------------------------------------------------x

Briccetti, J.:

      In this Section 1983 action, plaintiff Trevor Burns, proceeding pro se and in forma

pauperis, brings civil rights claims against defendants, Superintendent Thomas Griffin,

Corrections Officer ("CO") Michael T. Nagy, Lieutenant ("Lt.") Mark A. Tokarz, and CO Daniel

J. Shaw, employees of the New York State Department of Corrections and Community

Supervision ("DOCCS").

      Now pending is defendants Griffin's and Tokarz's motion to dismiss the amended

complaint as to them.   (Doc. #22).[1]

      For the reasons set forth below, the motion is DENIED.

      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

                                    **BACKGROUND**

      For purposes of ruling on a motion to dismiss, the Court accepts all factual allegations of

the complaint as true, and draws all reasonable inferences in plaintiff's favor.

---

[1]     Defendants Nagy and Shaw have answered the complaint.  (Doc. #21).

Copies Mailed/Faxed
Chambers of Vincent L. Briccetti

According to the complaint, plaintiff was an inmate at Green Haven Correctional Facility ("Green Haven") at all times relevant to the complaint.  On August 3, 2015, while plaintiff was eating breakfast in Green Haven's West Mess Hall, two other inmates began fighting.  Within seconds, corrections officers stopped the fight and the two inmates were handcuffed and laid face down on the floor.

Defendant Nagy "occupied and controlled the West Mess Hall Chemical Agent Booth" and "maliciously released canisters of chemical agents" in spite of being aware that both fighting inmates had been secured.  (Compl. ¶¶ 10–11).  A corrections officer ordered plaintiff to remain seated, and plaintiff experienced "burning excruciating pain about his face, eyes, arms and hand[, and was] coughing uncontrollably."  (Id. ¶ 12).  Nagy then allegedly released "additional myriad of chemical agent canisters upon the entire West Mess Hall."  (Id. ¶ 13).  Plaintiff experienced sharp, stinging pain in his nasal passage and lungs, was unable to breath, and continued coughing.

Corrections officers then directed plaintiff and the other inmates to exit the West Mess Hall.  In the process, other inmates and officers overran plaintiff, causing him to fall to the floor and land on his left hand and shoulder.  While on the ground, inmates trampled plaintiff and stomped on his back, legs, and side of his head.  Plaintiff eventually got up and continued running toward C and D Yard as directed.

Upon entering C and D Yard, defendant Lt. Tokarz allegedly ordered corrections officers to direct plaintiff and other inmates to place their hands on the D-Block corridor wall.  Tokarz did not begin the decontamination process and "told correctional officers to take down any inmate that removed their hands from the wall."  (Id. ¶ 17).  Plaintiff was forced to remain with

his hands on the wall for about an hour while experiencing "excruciating pain about his lungs, arms, face, eyes and nose." (Id. ¶ 17–18).

Plaintiff was then directed to proceed to A and B yard and to remove his clothing that was covered with residue from the chemical agents. Plaintiff walked barefoot in his underwear to the shower and washed his face and arms. Plaintiff was then ordered to "line up in the dirt" until he was escorted to his housing unit. (Id. ¶ 19).

Plaintiff claims defendants' conduct caused the following injuries: painful infection in both eyes; sharp pain and mucus secretion in both eyes; tearing eyes when exposed to light; headaches; impaired vision; future risk of blindness; nasal and throat infection; neck pain from swelling on right side of neck, causing difficulty breathing for over a week; sharp pain shooting from left wrist up along left forearm, causing limited movement and grasping strength in left wrist; and permanent damage to lower back causing severe pain and limited mobility. Plaintiff also claims defendants' actions caused him to experience anxiety, depression, stress, nightmares, and loss of appetite.

Plaintiff alleges Superintendent Griffin negligently supervised CO Nagy. Plaintiff claims his and his fellow inmates' grievances, complaints, and appeals put Griffin on notice of Nagy's tendency to use excessive force. Plaintiff claims Griffin failed to take corrective action, "fostered the unconstitutional policy and practices of Nagy," and was "grossly negligent" in his supervision of Nagy. (Id. ¶ 32).

Plaintiff also alleges that on April 16, 2015, approximately four months before the events at issue, he had filed a grievance against Nagy for being intoxicated on duty and for making verbal threats of serious bodily harm to plaintiff. Griffin reviewed and investigated plaintiff's April 16 grievance, and concluded plaintiff's allegations could not be substantiated and

therefore, no disciplinary action was necessary.  A few days later, Nagy was accused of assaulting another inmate at Green Haven.  Plaintiff alleges Griffin was aware of the assault and failed to take remedial action.

Plaintiff brings claims for excessive force and deliberate indifference to serious medical needs against Tokarz, and supervisory liability claims against Griffin.

Tokarz and Griffin now move to dismiss the claims against them.  Defendants contend the excessive force claim against Tokarz should be dismissed because plaintiff does not allege Tokarz used any force against him and Tokarz's alleged threat to "take down" anyone who removed their hands from the wall was not a constitutional violation.  As to the deliberate indifference to serious medical needs claim, defendants argue plaintiff fails to allege that Tokarz knew of and disregarded an excessive risk to plaintiff's health or safety.  Defendants argue the supervisory liability claim against Griffin should be dismissed because plaintiff does not allege Griffin's personal involvement.

In his opposition brief, plaintiff voluntarily withdrew his excessive force claim against Tokarz and his claims against defendants for monetary damages in their official capacities. Those claims are accordingly dismissed.

## DISCUSSION

I.   Legal Standards

A.   Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled

to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678;

Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard

of "plausibility."  Id. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is

facially plausible "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal,

556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks

for more than a sheer possibility that a defendant has acted unlawfully."  Id.

The Court must liberally construe submissions of pro se litigants, and interpret them "to

raise the strongest arguments that they suggest."  Triestman v. Fed. Bureau of Prisons, 470 F.3d

471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted).  Applying

the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges

civil rights violations.  See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir.

2008).  "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice."  Chavis v. Chappius, 618 F.3d

162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted).  Nor may the Court

"invent factual allegations" plaintiff has not pleaded.  Id.

B.     Section 1983

"To state a claim under § 1983, a plaintiff must allege (1) the deprivation of a right

secured by the Constitution or laws of the United States (2) which has taken place under color of

state law."  Rodriguez v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997).  Plaintiff must also allege

defendants' personal involvement in the claimed violation of plaintiff's rights.  Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001).  In other words, a plaintiff bringing a Section 1983 claim "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Ashcroft v. Iqbal, 556 U.S. at 676.

II.     Inadequate Medical Care Claim

To assert a claim for constitutionally inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  This test has both an objective and a subjective component:  plaintiff must plead facts showing (i) the alleged deprivation of medical care is "sufficiently serious," and (ii) the officials in question acted with a "sufficiently culpable state of mind."  Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006).

The objective component requires that the alleged deprivation of care be sufficiently serious:  the plaintiff's condition must present a "condition of urgency, one that may produce death, degeneration, or extreme pain."  Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (internal quotation marks and citation omitted).  In determining whether an alleged injury is a "serious" medical condition, "factors that have been considered include [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."  Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted).

The subjective component requires a showing that the defendants were aware of plaintiff's serious medical needs and consciously disregarded a substantial risk of serious harm.

Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006).  "[T]he charged official must act with a sufficiently culpable state of mind."  Id. (quoting Wilson v. Seiter, 501 U.S. 294, 300 (1991)).

The Court concludes plaintiff has sufficiently alleged facts to support a plausible claim against Tokarz for deliberate indifference to his serious medical needs.

A.      Objective component

Plaintiff alleges that as a result of exposure to chemical agents and being trampled during the ensuing chaos, he suffers from eye, nasal, and throat infections, has impaired vision, future risk of blindness, experiences severe ongoing pain, and has difficulty walking.  Accepting plaintiff's allegations as true, the Court is unable to conclude, as a matter of law, that plaintiff's alleged injuries could not have resulted in "chronic and substantial pain" that "significantly affect[ed his] daily activities.  See Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003) (internal quotation marks omitted).

B.      Subjective component

As to the subjective component, plaintiff has sufficiently alleged that Tokarz—who was allegedly responsible for overseeing the decontamination process following the inmates' exposure to chemical agents and ordered inmates to remain with their hands on the wall for an hour before being permitted to proceed with decontamination—was aware of plaintiff's serious medical needs.  Although it is a close question in light of plaintiff's thin allegations concerning defendant Tokarz's conduct, the Court concludes that, at this early stage of the case, plaintiff has sufficiently alleged facts plausibly supporting a claim that Tokarz, "acting with deliberate indifference, exposed [plaintiff] to a sufficiently substantial risk of serious damage to his future health."  See Farmer v. Brennan, 511 U.S. at 843 (internal quotation marks omitted).

III.   Negligent Supervision

As discussed above, to state a claim under Section 1983, plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. at 676.

Prior to Ashcroft v. Iqbal, a supervisor's personal involvement in a claimed constitutional violation could have been established by providing evidence of any one or more of the following five factors:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).  After Ashcroft v. Iqbal, however, district courts within this circuit have been divided as to whether claims alleging personal involvement under the second, fourth, and fifth of these factors remain viable.  See Marom v. City of N.Y. 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7, 2016) (collecting cases).[2]  The Second Circuit has yet to resolve this dispute.  Id.

Plaintiff has alleged sufficient facts to withstand Griffin's motion to dismiss.  Indeed, plaintiff specifically alleges Superintendent Griffin knew CO Nagy had used and threatened to use excessive force on inmates on a number of occasions prior to the August 3 incident.  Plaintiff himself submitted a grievance on April 16, 2015, alleging Nagy was intoxicated at work, threatened serious physical injury to inmates, and used racial slurs.  Plaintiff also alleges Nagy

---

[2]     Plaintiff will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

8

attacked another inmate shortly after plaintiff submitted the April 16 grievance and that Griffin was aware of this assault.  Plaintiff therefore contends Griffin knew or should have known of Nagy's propensity to use excessive force against inmates, and yet failed to discipline Nagy adequately or monitor his actions.  These allegations support a claim that Griffin was "grossly negligent in supervising" a subordinate who committed a wrongful act and "exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring."  See Colon v. Coughlin, 58 F.3d at 873.

IV.    Qualified Immunity

Defendants alternatively argue that in the event the Court finds plaintiff has stated viable claims under Section 1983, they are entitled to qualified immunity.

The Court disagrees.

Government officials performing discretionary functions are "shielded from liability for civil damages" as long as their conduct does not breach "clearly established statutory or constitutional rights of which a reasonable person would have known."  Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 817–18 (1982)).  This defense protects a government actor when it is objectively reasonable to believe his or her actions were lawful at the time of the challenged act.  Lennon v. Miller, 66 F.3d at 420 (citations omitted).  Thus, "the objective reasonableness test is met—and the defendant is entitled to immunity—if 'officers of reasonable competence could disagree' on the legality of the defendant's actions."  Id. (quoting Malley v. Briggs, 475 U.S. 335, 340–41 (1986)).

Assuming as the Court must that the allegations set forth in the complaint are true for purposes of this motion, they plainly state claims for the deprivation of constitutional rights—

namely, the right to be free from cruel and unusual punishment in the form of excessive force and the deliberate indifference to serious medical needs.

V.    Leave to Amend

In his opposition brief (Doc. #25), plaintiff requests leave to file an amended complaint requesting injunctive relief because he is allegedly still not receiving adequate medical treatment. District courts generally grant pro se plaintiffs an opportunity to amend a complaint unless amendment would be futile.  See Hill v. Curcione, 657 F.3d 116, 123-24 (2d Cir. 2011); Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988).  In light of plaintiff's pro se status and the early stage of these proceedings, the Court grants plaintiff leave to amend his complaint.  In his amended complaint, plaintiff should include all relevant facts supporting his request for injunctive relief.

The amended complaint will completely replace the existing complaint.  Therefore, in the event plaintiff chooses to amend, he should include in the amended complaint all information necessary for any of the claims he wishes to pursue.  The deadline for plaintiff to submit his amended complaint containing all of his allegations against all defendants is December 30, 2016.

**CONCLUSION**

The motion to dismiss is DENIED.

Plaintiff's amended complaint, if any, shall be filed by December 30, 2016, in accordance with Part V above.  Plaintiff is directed to utilize the Amended Complaint form attached hereto.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the motion.  (Doc. #22).

Dated: November 29, 2016
       White Plains, NY

                                        SO ORDERED:


                                        Vincent L. Briccetti
                                        United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
_____
_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

_____
_____
_____
_____
_____
_____
_____

*(In the space above enter the full name(s) of the defendant(s).  If you
cannot fit the names of all of the defendants in the space provided,
please write "see attached" in the space above and attach an
additional sheet of paper with the full list of names.  The names
listed in the above caption must be identical to those contained in
Part I.  Addresses should not be included here.)*

**AMENDED
COMPLAINT**

under the Civil Rights Act,
42 U.S.C. § 1983

Jury Trial:   ☐ Yes      ☐ No
                        (check one)

___ **Civ.** _____ (    )

---

**I.       Parties in this complaint:**

A.     List your name, identification number, and the name and address of your current place of
       confinement.  Do the same for any additional plaintiffs named.  Attach additional sheets of paper
       as necessary.

Plaintiff's        Name_____
                   ID#_____
                   Current Institution_____
                   Address_____
                   _____

B.     List all defendants' names, positions, places of employment, and the address where each defendant
       may be served.  Make sure that the defendant(s) listed below are identical to those contained in the
       above caption.  Attach additional sheets of paper as necessary.

Defendant  No. 1        Name _____ Shield #_____
                        Where Currently Employed _____
                        Address _____
                        _____

Defendant  No. 2      Name _____ Shield #_____

Where Currently Employed _____

Address _____

_____

Defendant  No. 3      Name _____ Shield #_____

Where Currently Employed _____

Address _____

_____

<div style="border:1px solid black; display:inline-block; padding:4px">Who did<br>what?</div>

Defendant  No. 4      Name _____ Shield #_____

Where Currently Employed _____

Address _____

_____

Defendant  No. 5      Name _____ Shield #_____

Where Currently Employed _____

Address _____

_____

## II.      Statement of Claim:

State as briefly as possible the <u>facts</u> of your case.   Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as necessary.

A.      In what institution did the events giving rise to your claim(s) occur?

_____

_____

B.      Where in the institution did the events giving rise to your claim(s) occur?

_____

C.      What date and approximate time did the events giving rise to your claim(s) occur?

_____

_____

_____

D.      Facts:_____

<div style="border:1px solid black; display:inline-block; padding:4px">What<br>happened<br>to you?</div>

_____

_____

_____

| Was anyone else involved? |
| --- |

| Who else saw what happened? |
| --- |

## III.    Injuries:

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received.

## IV.    Exhaustion of Administrative Remedies:

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Administrative remedies are also known as grievance procedures.

A.    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

Yes _____   No _____

If YES, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

_____
_____
_____

B.    Does the jail, prison or other correctional facility where your claim(s) arose have a grievance procedure?

Yes _____    No _____    Do Not Know _____

C.    Does the grievance procedure at the jail, prison or other correctional facility where your claim(s) arose cover some or all of your claim(s)?

Yes _____    No _____    Do Not Know _____

If YES, which claim(s)?

_____

D.    Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose?

Yes _____    No _____

If NO, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

Yes _____    No _____

E.    If you did file a grievance, about the events described in this complaint, where did you file the grievance?
_____

1.    Which claim(s) in this complaint did you grieve?

_____

2.    What was the result, if any?

_____

3.    What steps, if any, did you take to appeal that decision?  Describe all efforts to appeal to the highest level of the grievance process.

_____
_____
_____
_____

F.    If you did not file a grievance:

1.    If there are any reasons why you did not file a grievance, state them here:

_____
_____
_____

_____
_____
_____

2.      If you did not file a grievance but informed any officials of your claim, state who you
        informed, when and how, and their response, if any:

_____
_____
_____
_____
_____
_____

G.      Please set forth any additional information that is relevant to the exhaustion of your administrative
        remedies.

_____
_____
_____
_____
_____
_____
_____
_____

<u>Note</u>:   You may attach as exhibits to this complaint any documents related to the exhaustion of your
        administrative remedies.

**V.      Relief:**

State what you want the Court to do for you (including the amount of monetary compensation, if any, that
you are seeking and the basis for such amount). _____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

_____

_____

_____

_____ .

**VI.    Previous lawsuits:**

On
these
claims

A.    Have you filed other lawsuits in state or federal court dealing with the same facts involved in this
action?

      Yes _____    No _____

B.    If your answer to A is YES, describe each lawsuit by answering questions 1 through 7 below.  (If
there is more than one lawsuit, describe the additional lawsuits on another sheet of paper, using
the same format.)

    1.    Parties to the previous lawsuit:

    Plaintiff _____

    Defendants _____

    2. Court (if federal court, name the district; if state court, name the county) _____

    _____

_____    3.    Docket or Index number _____

_____    4.    Name of Judge assigned to your case _____

    5.    Approximate date of filing lawsuit _____

    6.    Is the case still pending?  Yes _____    No _____

        If NO, give the approximate date of disposition_____

    7.    What was the result of the case? (For example:  Was the case dismissed?  Was there
judgment in your favor?  Was the case appealed?) _____

    _____

    _____

On
other
claims

C.    Have you filed other lawsuits in state or federal court otherwise relating to your imprisonment?

    Yes _____    No _____

D.    If your answer to C is YES, describe each lawsuit by answering questions 1 through 7 below. (If
there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using
the same format.)

    1.    Parties to the previous lawsuit:

    Plaintiff _____

    Defendants _____

    2.    Court (if federal court, name the district; if state court, name the county) _____

    _____

_____    3.    Docket or Index number _____

_____    4.    Name of Judge assigned to your case_____

    5.    Approximate date of filing lawsuit _____

6.      Is the case still pending?  Yes _____  No _____

        If NO, give the approximate date of disposition_____

7.      What was the result of the case? (For example:  Was the case dismissed?  Was there judgment in your favor?  Was the case appealed?) _____

        _____

        _____


**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this ____ day of _____, 20___.


                        Signature of Plaintiff     _____

                        Inmate Number            _____

                        Institution Address       _____

                                                 _____

                                                 _____

                                                 _____


<u>Note</u>:   All plaintiffs named in the caption of the complaint must date and sign the complaint and provide their inmate numbers and addresses.


I declare under penalty of perjury that on this _____ day of _____, 20__, I am delivering this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for the Southern District of New York.


                        Signature of Plaintiff:  _____