USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/16/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
TREVOR BURNS,

               Plaintiff,

   -against-               16 CV 0782(VB)

THOMAS GRIFFIN, et al.,

               Defendants.
----------------------------------------X

<u>DECLARATION OF TREVOR BURNS</u>
<u>IN SUPPORT OF PLAINTIFF'S MEMORANDUM OF LAW</u>
<u>IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

    I, Trevor Burns, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury and state the following:

    1.    I, Trevor Burns, 97-A-6087, proceeding <u>pro se</u>, am the plaintiff in the above entitled action. I submit this declaration in Support of the Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Mem. in Opp'"). All of the facts set forth herein are known to me personally, or upon information and belief, and if called as witness I could and would testify competently thereto.

    2.    The defendants are not entitled to summary judgment because there are genuine issues of material fact to be resolved. These facts are identified in the accompanying Statement of Disputed Factual Issues filed by the plaintiff pursuant to Rule 56.1 (b) of the Local Rules of the Southern and Eastern District of New York. The facts are set out in the declaration and Mem. in Opp'.

    3.    Attached hereto as Exhibit A is a true and correct copy of cited pages from the transcript of Trevor Burns, 97-A-6087, April 28, 2017 deposition.

    4.    Attached hereto as Exhibit B is a true and correct copy of cited

grievances filed by inmates at Green Haven Correctional Facility ("Green Haven"), pertaining to defendant Michael T. Nagy's ("Nagy") sadistic use of chemical agents in the West Mess Hall on August 3, 2015 (Bates Nos. BURNS CONSOL GRVCS 0021, 0026-27, 0032, 0041, 0045-47, 0049, 0053, 0055, 0065-67, 0069, 0071, 0079-80, 0082-84, 0086-87, 0096, 0098-0101, 0120, 0124-0125, 0131-0133, 0157).

5. New York State Department of Corrections and Community Supervision ("DOCCS") officials who are trained in use of chemical agents in a correctional facility, are obligated to follow strict rules and regulations. See attached hereto as Exhibit C a true and correct copy of 9 NYCRR § 706.4, Use of chemical agents.

6. Corrections officers trained in the use of chemical agents are not authorized to use them without prior approval from qualified supervisory DOCCS personnel. See attached hereto as Exhibit D is a true and correct copy of 9 NYCRR § 7063.3(a), (b), Authorization for the use of chemical agents. However, in emergency cases that present an "immediate threat of death, serious injury," or "severely" threatens the safety or security of the correctional facility. A corrections officer trained in the application of chemical agents have authority to use it. Id.

7. On August 3, 2017, I was subjected to excessive force, when Nagy unjustifiably dispensed chemical agents in the West Mess Hall at Green Haven. Nagy's malicious actions did not comport with my Eighth Amendment U.S. Constitutional right, or governing standards on treatment of prisoners. See attached hereto as Exhibit E is a true and correct copy of the ABA Standard on the Treatment of Prisoners; Approved by the ABA House of Delegates February 2010, Standards §§ 23-5.1(a); 23-5.2(a); 23-5.6(b), (c) and (e); 23-5.8(a)(ii) and (b)(i)(iv)(v).

8. Attached hereto as Exhibit F is a true and correct copy of DOCCS

2.

To/From Reports relating to the August 3, 2015 chemical agent release at Green Haven (Bates Nos. BURNS 000045, 000088, 000089, 000107).

9. Attached hereto as Exhibit G is a true and correct copy of the Misbehavior Reports relating to the August 3, 2015 chemical agent release at Green Haven (Bates Nos. BURNS 000048, 000049).

10. On August 3, 2015, Nagy was stationed in the West Mess Hall chemical agent booth at Green Haven. He observed two inmates who fought being fully restrained with mechanical restraints on their wrists. Nagy then immediately dispensed chemical agents in the mess hall without seeking authorization from his supervising official Sergeant Robert Cocuzza, or any other authorized supervisory official.

11. The two inmates who were fighting did not present any immediate threat of death, serious injury, or severely threaten the safety or security of Green Haven. Because, both inmates were immobilized (handcuffed) when Nagy dispersed the chemical agents.

12. I personally witnessed and heard almost the entire incident transpire by counter one side of the West Mess Hall. At no point in time did any unidentified inmate stand up, yelling, "This isn't a real riot, lets get this shit started. Lets riot, fuck these guys." Also, at no point in time did I hear and observe any unidentified inmate, leave his table and approach an unidentified officer from behind in a threatening manner with his fist balled up.

13. While I was incarcerated at Green Haven, an investigator from the Office of Special Investigations ("OSI") visited me at the facility. The OSI Investigator provided me with confidential files concerning the August 3, 2015 chemical agent disbursement in the West Mess Hall. I truthfully and accurately memorialized pertinent parts of a confidential document bearing Bates No. BURNS

000524 (DOCCS disciplinary hearing disposition relating to a misbehavior report, written on an unidentified inmate allegedly involved in the August 3, 2015 chemical agent disbursement in the West Mess Hall).

14. On or about November 4, 2015, a DOCCS Hearing Officer found this inmate of misbehaving based upon Nagy's testimony at the disciplinary hearing. The evidence relied upon by hearing officer is as follows; "[Nagy] stated chemical agents were 'deployed to quell the fight' as well as when 'inmate [ ], stood up and refused to sit down.'" See OSI confidential file bearing Bates No. BURNS 00524.

15. On August 3, 2015, subsequent to Nagy's unnecessary use of force on me at Green Haven. I returned to B-Block where I was housed. At approximately 1:45PM I was seen by a medical nurse relating to my exposure to chemical agents. That entire day I only encountered medical personnel once. Defendant Daniel J. Shaw ("Shaw") did not escort any nurse around the housing unit to visit me in 201 cell. Shaw could not have possibly performed this task on August 3, 2015, because he worked the 3PM to 11PM shift in B-Block at Green Haven.

16. On August 3, 2015, the gallery officer informed Shaw I loss consciousness and was vomiting. Shaw arrived at my cell location and saw vomit on my floor and me regaining consciousness. I never complained to Shaw of "neck" and "back" problems.

17. Shaw did not call an emergency response to address my serious medical condition. Instead, Shaw or another corrections officer called the "medication nurse" at Green Haven, per direction of Shaw, concerning my serious medical condition. Instead of Shaw explaining correct symptoms I have experienced, and what Shaw witnessed. The medication nurse was never informed I had experienced "difficulty breathing" and "loss consciousness." Attached hereto as Exhibit H is a true and correct copy B-Block Log Book entries from Green Haven dated August

4.

3, 2015.

18. On or about February 27, while incarcerated at Green Haven, inmate Lopez filed a grievance against Nagy. This grievance described how Nagy intentionally denied Lopez meals on three (3) consecutive days, used violent vulgar language towards him, and repulsively called Lopez a "spic." Attached hereto as Exhibit I is a true and correct copy of the procedural history, concerning a grievance Lopez filed against Nagy dated February 27, 2015 (Bates Nos. HISTORICAL GRVCS 000079-000092).

19. On April 16, 2015, I filed a grievance against Nagy at Green Haven. It related to an incident where Nagy threatened me with serious physical injury, smelling and appearing intoxicated from alcohol, and repulsively calling me "nigger." Attached hereto as Exhibit J is a true and correct copy of the procedural history concerning, a grievance I filed against Nagy dated April 16, 2015 (Bated Nos. HISTORICAL GRVCS 000105-000128).

20. On or about April 25, 2015, while incarcerated at Green Haven in "A-Block housing unit." Lopez filed another grievance against Nagy. According to Lopez, Nagy administered an unprovoked use of excessive force in retaliation for the grievance Lopez filed on or about February 27, 2015. Lopez sustained serious physical injuries as a result of this unwarranted attack. Attached hereto as Exhibit K is a true and correct copy of the procedural history concerning, the grievance Lopez filed against Nagy dated April 25, 2015 (Bates Nos. HISTORICAL GRVCS 000001-000028).

21. Defendant Superintendent Thomas Griffin ("Supt. Griffin") has been the superintendent of Green Haven from November 4, 2014, to present. As superintendent, Griffin has broad authority over day-to-day operations of the facility. He is also responsible for ensuring over 900 employees and 2000 inmates at Green Haven follow the law, DOCCS directives, and all policies he

promulgates.

22. It is Supt Griffin's duty to supervise Nagy pursuant to New York Correction Law § 18(2)-(3) (McKinney 2009), but he neglects such responsibility and instead delegates Deputy Superintendents, Captains, Lieutenants and Sergeants to supervise corrections officers.

23. DOCCS maintains a statewide grievance system established by DOCCS Directive 4040, where inmates can file a grievance to address treatment or conditions within the facility. See Declaration of Thomas Griffin ("Griffin Decl."), Ex. A DOCCS Directive 4040, which is codified in 7 NYCRR § 701.1 et.

24. Grievances filed by inmates alleging harassment or discrimination by employees [m]ust be be forwarded to the superintendent for review. See Griffin Decl., Ex. A, § 701.8(b)-(c). If it is determined by the superintendent that the grievance is a bons fide harassment issue, the "superintendent shall [i]nitiate an in-house 'i[n]vestigation' by higher ranking supervisory personnel." See Griffin Decl., Ex. A, § 701.8(d)(1).

25. The superintendent must address a bona fide harassment grievance. See Griffin Decl., Ex. A, § 701.8(e).

26. Within 25 calender days, the superintendent should render a decision on the grievance. It Griffin's duty to state reasons for his decision, then transmit said decision to grievance clerk. See Griffin Decl., Ex. A, § 701.8(f).

27. Griffin was aware of three (3) bona fide grievances filed against Nagy, because Griffin personally reviewed each grievance, deciding not to delegate any supervisory official to investigate Burns' and Lopez's grievances. See supra, ¶ 18, Ex. I HISTORICAL GRVCS 000082; ¶ 19, Ex. J HISTORICAL GRVCS 000105; ¶ 20, Ex. K HISTORICAL GRVCS 000005.

28. The supervisory officials dispatched by Griffin, to interview witnesses concerning grievances I, and Lopez filed against Nagy. Did not make a

6.

factual finding on all three grievances. See Id., ¶ 18, Ex. I HISTORICAL GRVCS 000088-000090; ¶ 19, Ex. J HISTORICAL GRVCS 000126-000127; ¶ 29, Ex. K HISTORICAL GRVCS 000013-000020.

29. On August 20, 2017 while I was incarcerated at Green Haven, DOCCS officials permitted me to review information pertaining to the brand, type and kind of chemical agents deployed in the West Mess Hall at Green Haven, on August 3, 2015. I took truthful and accurate notes of relevant information, including name of the chemical agents which is CHLOROBENZAL-MALONONITRILE ("CM").

30. The manufacturer supplier of CM is Mace Security International, Inc. ("MSI"). MSI, provided guidelines on the Health Hazards and First-Aid once victims are exposed to CM. The health hazards are as follows: 1. "Extreme irritation to eye and skin; 2. Overexposure may result in headaches, fluid in the lungs, difficulty breathing, loss of reflexes, contraction of the pupils and coma; 3. Ingestion may cause irritation to stomach or other respiratory system."

31. MSI, first-aid instructions on what to do if victims are exposed to CM, are as follows: (1) "Inhalation: Remove victim to open airway and restore breathing, if necessary. Seek medical treatment immediately; (2) Eyes: Hold eyelids open and flush for 15 minutes with copious amounts of water. Seek medical attention immediately; (3) Skin: Remove contaminated clothing. Seek medical treatment immedistely; and (4) Ingestion: If victim is conscious, provide water and induce vomiting. Seek medical attention immediately."

32. Attached hereto as Exhibit L is a true and correct copy of DOCCS Memo' Report pertaining to grievances inmates filed at Green Haven, regarding Nagy's unnecessary use of force with the chemical agents, in the West Mess Hall on August 3, 2015.

33. Attached hereto as Exhibit M is a true and correct copy of cited pages from Burns' Ambulatory Health Records (Bates Nos. BURNS 000582-000669).

7.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 9, 2018.

By: _____
Mr. Trevor Burns 97-A-6087
Eastern N.Y. Correctional Facility

## Plaintiff's Second Volume of Exhibits

Ex. I  A grievance Lopez filed against Nagy dated February 27, 2015 (Bates Nos. 000079-000092).

Ex. J  A grievance plaintiff filed against Nagy dated April 16, 2015 (Bates Nos. HISTORICAL GRVCS 000105-000128).

Ex. K  A grievance Lopez filed against Nagy dated April 25, 2015 (Bates Nos. HISTORICAL GRVCS 000001-000028).

Ex. L  DOCCS Memorandum report relating to grievances filed by inmates at Green Haven relating to the use of chemical agents being released in the West Mess Hall on August 3, 2015.

Ex. M  Cited pages from plaintiff's Ambulatory Health Records (Bates Nos. BURNS 000682-000669).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
TREVOR BURNS,

                Plaintiff,        16 CV 0782 (VB) (PED)

  -against-

                                       AFFIRMATION OF SERVICE

THOMAS GRIFFIN, et al.,

               Defendants.
----------------------------------------x

    I, Trevor Burns, Din No. 97-A-6087, declare under penalty of perjury of the United States of America that:

    I have served a copy of the attached **Plaintiff's Statement of Disputed Factual Issues, Declaration of Trevor Burns in Support of Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, and Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment** upon Ms. Julinda dawkins, Assistant Attorney General whose address is State of New York Office of the Attorney General, 120 Broadway, 24th Floor, New York, New York 10271, by depositing a true and correct copy thereof, properly enclosed in an envelop with sufficient postage for first-class delivery, in a United States Postal Service box to officials at Eastern N.Y. Correctional Facility, on the 9th day of January.

Dated: Napanoch, New York
       January 9, 2018                      By: _____
                                                        Mr. Trevor Burns 97-A-6087
                                                        Eastern N.Y. Correctional Facility
                                                        P.O. Box 338
                                                        Napanoch, New York 12458-0338

Mr. Trevor Burns # 97-a-6087
Eastern N.Y. Correctional Facility
P.O. Box 338
Napanoch, New York 12458-0338






CLERK
Pro Se Intake Unit
U.S. District Court
Southern District of New York
300 Quarropas, Street
White Plains, New York 10601-4150



RETURN RECEIPT
REQUESTED

RECEIVED
JAN 10 2018
U.S.D.C.
WP




USM WP
SDNY

"Legal Mail"